IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BELINDA DURM | ) | CASE NO. |
| 407 Sycamore Road, Apt. 2 | ) | |
| Trenton, Ohio 45067 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| IQOR HOLDINGS US LLC | ) | |
| 4836 Brecksville Road | ) | **JURY DEMAND ENDORSED** |
| Richfield, Ohio 44286 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| IQOR Holdings US LLC | ) | |
| c/o Corporation Service Company | ) | |
| 50 W. Broad Street, Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| GARY JANZIG | ) | |
| c/o IQOR HOLDINGS US LLC | ) | |
| 4836 Brecksville Road | ) | |
| Richfield, Ohio 44286 | ) | |
| | ) | |
| **Serve also:** | ) | |
| Gary Janzig, statutory agent | ) | |
| 937 Bristol Lane | ) | |
| Northfield, Ohio 44056 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Belinda Durm, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

**PARTIES AND VENUE**

1.     Durm is a resident of the city of Lorain, county of Lorain, state of Ohio.

2. IQOR Holdings US LLC ("IQOR") is a foreign limited liability company that operates a business located at 4836 Brecksville Road, Richfield, Ohio 44286.

3. Upon information and belief, Janzig is a resident of the state of Ohio.

4. Janzig was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at IQOR who acted directly or indirectly in the interest of IQOR.

5. Janzig was at all times hereinafter mentioned an employer of/at IQOR.

6. Janzig made and/or participated in the adverse actions asserted herein.

7. At all times referenced herein, Janzig supervised and/or controlled the employment of Durm with IQOR and acted directly or indirectly in the interest IQOR in relation to its employees, including controlling and/or establishing its day to day operations and respective compensation practices; therefore, Janzig is an employer within the meaning of Ohio R.C. § 4112.01 (A)(2); Article II, Section 34a of the Ohio Constitution; and the Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 203(d).

8. At all times referenced herein, Janzig was an employer within the meaning of 29 U.S.C. § 2611(4)(A)(i)-(iii) of the Family Medical Leave Act, ("FMLA"), 29 U.S.C. § 2617, *et seq.*

9. Janzig is a "person" within the meaning of Ohio R.C. § 4112.01(A)(1).

## PERSONAL JURISDICTION

9. Defendants hire citizens of the state of Ohio, contracts with companies in Ohio, and own or rent property in Ohio.  As such, the exercise of personal jurisdiction over Defendants comports with due process.

10. Durm performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

11. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, in that Durm is alleging federal law claims under the Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq.*, the FMLA, 29 U.S.C § 2601, *et seq.*, and the FLSA, 29 U.S.C. § 201 *et seq.*

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Durm's state law claims under Ohio's anti-discrimination statute, Ohio R.C. § 4112.01, *et seq*; the Ohio Minimum Fair Wages Standards Act ("OMFWSA"); and the Ohio Constitution because those claims derive from a common nucleus of operative facts.

13. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

## COVERAGE

14. At all times referenced herein, IQOR formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

15. At all times material to the Complaint, Durm directly participated in the actual movement of things in interstate commerce by regularly using instrumentalities of interstate commerce in her work, namely by using the telephone to solicit and take payments from debtors across the country in the furtherance of IQOR's debt collection business.

16. At all times referenced herein, Defendants were employers within the meaning of the FLSA and the OMFWSA.

17. At all times referenced herein, IQOR was an employer within the meaning of 29 U.S.C. § 2611(4)(A)(i)-(iii) of the Family Medical Leave Act ("FMLA"), in that Defendant, at all times thereinafter mentioned, engaged in commerce or in any industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2617, *et seq.*

18. Within 300 days of the conduct alleged below, Durm filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-02355 against IQOR.

19. On or about January 7, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Durm regarding the Charges of Discrimination brought by Durm against IQOR in EEOC Agency Charge No. 532-2019-02355.

20. Durm received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

21. Durm has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

22. Durm has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

### (Facts Relating To Durm's Employment And Termination From IQOR).

23.  Durm is a former employee of IQOR.

24.  IQOR hired Durm on or about January 23, 2018.

25.  IQOR employed Durm as a debt collector.

26.  Durm had no meaningful history of performance-based discipline during her employment.

27.  Durm suffers from bilateral osteoarthritis in her knees.

28.  Durm suffers from degenerative joint disease in her back.

29.  The symptoms Durm suffers as a result of the bilateral osteoarthritis and degenerative joint disease substantially impair one or more major life activities including working.

30.  As a result of suffering from bilateral osteoarthritis and degenerative joint disease, Durm is considered disabled.

31.  IQOR became aware that Durm suffered from bilateral osteoarthritis and degenerative joint disease.

32.  Janzig became aware that Durm suffered from bilateral osteoarthritis and degenerative joint disease.

33.  In the alternative, Defendants perceived Durm to be disabled.

34.  Despite this actual or perceived disabling condition, Durm was still able to perform the essential functions of her job with or without reasonable accommodation.

35.  In the summer of 2018, Durm had to start receiving injections in her knees as a result of her disability.

36.  Durm did not advise Defendants prior to her hiring that she would need to receive injections in her knees as a result of her hiring.

37. Durm suffered swelling and pain following the injections.

38. Durm would periodically request time off work due to the pain she suffered as a result of her disability.

39. When Durm advised Defendants that she would be receiving injections and may need time off work, Defendants did not engage in an interactive process to find a reasonable accommodation for Durm's disability.

40. Defendants violated 42 U.S.C. 126 § 12101 *et seq.* when no one at IQOR engaged in an interactive process to find a reasonable accommodation for Durm's disability.

41. Defendants violated R.C. § 4112.01 *et seq.* when no one at IQOR engaged in an interactive process to find a reasonable accommodation for Durm's disability.

42. Defendants have no contemporaneously created documents reflecting any effort to determine if Durm should be accommodated after disclosing that she would need injections.

43. Defendants would instruct Durm to work four ten-hour shifts to make up for requesting time off work.

44. Defendants were aware working ten-hour shifts would exacerbate Durm's symptoms.

45. Defendants instructed Durm to work longer shifts following time off because of her disability.

46. In the alternative, Defendants instructed Durm to work longer shifts following time off because of her perceived disability.

47. Durm requested that IQOR provide her with an ergonomic chair to accommodate her disability.

48. IQOR told Durm that she could buy her own ergonomic chair if she wanted one.

49. Durm's request for an ergonomic chair was reasonable.

50. Providing Durm an ergonomic chair for her disability would not have created and/or caused an undue hardship on Defendants.

51. Defendants did not determine if Durm's request for an ergonomic chair would cause an undue hardship.

52. Defendants have no contemporaneously created documents reflecting any effort to determine if Durm's request for an ergonomic chair would cause an undue hardship.

53. After Durm requested an ergonomic chair, no one at IQOR engaged in the interactive process to find a reasonable accommodation for Durm.

54. Defendants violated 42 U.S.C. § 12101 *et seq.* when no one at IQOR engaged in an interactive process to find a reasonable accommodation for Durm when she requested an ergonomic chair.

55. Defendants violated R.C. § 4112.01 *et seq.* when no one at IQOR engaged in an interactive process to find a reasonable accommodation for Durm when she requested an ergonomic chair.

56. IQOR threatened to discipline Durm because she was taking too long for bathroom breaks.

57. Durm has difficulty walking due to her disability.

58. It would take Durm longer than an average person to walk to and from the bathrooms due to her disability.

59. IQOR's bathrooms were located far away from Durm's work location.

60. IQOR threatened to write up Durm for taking long bathroom breaks because of her disability.

61. Alternatively, IQOR threatened to write up Durm for taking long bathroom breaks because of her perceived disability.

62. IQOR threatened to dock Durm's pay as a result of taking long bathroom breaks.

63. IQOR threatened to dock Durm's pay as a result of taking long bathroom breaks because of her disability.

64. Alternatively, IQOR threatened to dock Durm's pay as a result of taking long bathroom breaks because of her perceived disability.

65. Durm complained to IQOR that threatening to dock her pay due to taking long bathroom breaks was harassing and/or discriminating on the basis of her disability.

66. It would be reasonable to allow Durm to take longer bathroom breaks.

67. Allowing Durm to take long bathroom breaks would not cause an undue hardship on Defendants.

68. Defendants did not determine if Durm's complaint and/or request to take a long bathroom break would cause an undue hardship.

69. Defendants have no contemporaneously created documents reflecting any effort to determine if Moore's complaint and/or request to take a long bathroom break would cause an undue hardship.

70. After threatening to discipline Durm for taking long bathroom breaks, no one at IQOR engaged in an interactive process to find a reasonable accommodation for Durm's disability.

71. Defendants violated 42 U.S.C. § 12101 *et seq*. when no one at IQOR engaged in an interactive process to find a reasonable accommodation for Durm's disability.

72. Defendants violated R.C. § 4112.01 *et seq*. when no one at IQOR engaged in an interactive process to find a reasonable accommodation for Durm's disability.

73. Durm took off work on September 3-6, 2018 due to suffering from severe pain from her disability.

74. Durm advised Defendants that she would need to take off September 3-6, 2018 due to suffering from severe pain from her disability.

75. Durm advised Defendants on September 7, 2018 that she wanted to apply for a leave of absence due to her disability.

76. Durm advised Defendants on September 7, 2018 that she would like to apply for FMLA leave so that she could take a leave of absence due to her disability.

77. Durm applied for FMLA leave on or about September 7, 2018 so that she could take a leave of absence due to her disability.

78. Defendants advised Durm that she did not qualify for FMLA leave.

79. Defendants advised Durm that she could apply for and use ADA disability leave.

80. Durm's doctor complied with requests from IQOR for information regarding her disability and work limitations.

81. Durm's doctor advised Defendants that Durm could work but that Durm may have to leave work at times due to severe pain.

82. Durm received a work release with restrictions on or about November 8, 2018.

83. Durm could have performed her essential job duties with Defendants with or without reasonable accommodation(s) as of November 8, 2018.

84. Defendants advised Durm that if she were not able to return to work without restrictions on January 2, 2019, that her employment would be terminated.

85. Defendants were aware that due to Durm's disability, she would have some restrictions as of January 2, 2019.

86. Defendants told Durm that she could not return to work unless she did not have any work restrictions because of her disability.

87. Alternatively, Defendants told Durm that she could not return to work unless she did not have any work restrictions because of a perceived disability.

88. Defendants told Durm that she could not return to work unless she did not have any work restrictions because Defendants did not want to accommodate her disability.

89. Defendants told Durm that she could not return to work unless she did not have any work restrictions because Durm made complaints that they were discriminating against her because of a disability and/or perceived disability.

90. Defendants terminated Durm's employment on or about January 7, 2019 because she could not return to work without restrictions.

91. Defendants terminated Durm's employment because of her disability.

92. Alternatively, Defendants terminated Durm's employment because of a perceived disability.

93. Defendants terminated Durm's employment because they did not want to accommodate her disability.

94. Defendants terminated Durm's employment because Durm made protected complaints regarding discrimination on the basis of her disability and/or perceived disability.

95. Defendants terminated Durm in retaliation for applying for FMLA leave.

96. Defendants terminated Durm in retaliation for asking if she could utilize FMLA leave.

97.   Defendants terminated Durm in retaliation for requesting to utilize FMLA leave so as to block her from becoming eligible to use FMLA leave.

**(Facts Relating To Durm's Claims Under The FLSA And OMFWSA).**

98.   At all times referenced herein, Durm was paid hourly and was thus non-exempt from the overtime requirements of the FLSA and OMFWSA.

99.   Durm was paid $13.50 per hour during her employment with Defendants.

100.  From time to time, Durm worked greater than 40 hours in a single work week.

101.  Durm used a computer in connection with her work.

102.  Durm's hours of work were captured via a computer program installed on the computer Durm used to perform her job duties ("Time Program")

103.  The Time Program would not begin recording Durm's time until she was logged into her computer; had opened all necessary software; and was taking calls.

104.  Durm typically had to log into her computer as much as 15 minutes before her shift started in order to get logged into her computer and to get all of her software up and running ("Pre-Shift Work").

105.  Durm was not paid for Pre-Shift Work.

106.  Sometimes Durm would be delayed in logging into her computer or from opening certain software due to technical issues with the software or because of problems with her password(s) ("Software Delays").

107.  Durm was not paid for the extra time it took to log into her computer or to start up her software when there were Software Delays.

108. Upon information and belief, Defendants would not begin recording Durm's time until she received a call; time Durm spent waiting for her first call to come in was not compensated ("Lag Time").

109. As a result of the unpaid Pre-Shift Work, Software Delays, and Lag Time, Durm was not paid for 15 minutes to an hour of work each day ("Unpaid Work").

110. As a result of Durm's Unpaid Work, she was denied overtime pay for all overtime worked.

111. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

112. Defendants' conduct as alleged herein is so egregious that Defendants cannot establish that they had a good faith belief that their conduct reasonably complied with the FLSA.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 1201 *et seq.*

### (Asserted Against IQOR Only).

113. Durm restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

114. Durm suffers from bilateral osteoarthritis in her knees.

115. Durm suffers from degenerative joint disease in her back.

116. The symptoms Durm suffers as a result of the bilateral osteoarthritis and degenerative joint disease substantially impair one or more major life activities including working.

117. As a result of suffering from bilateral osteoarthritis and degenerative joint disease, Durm is considered disabled.

118. Alternatively, Defendants perceived Durm to be disabled.

119. Despite any real or perceived disability, Durm could complete her essential job functions with or without reasonable accommodation(s).

120.    Defendants treated Durm differently than other similarly-situated employees based on her disabling condition.

121.    Alternatively, Defendants treated Durm differently than other similarly-situated employees based on her perceived disabling condition.

122.    Defendants terminated Durm's employment without just cause.

123.    Defendants terminated Durm's employment based on her disability.

124.    Alternatively, Defendants terminated Durm's employment based on her perceived disability.

125.    Defendants violated 42 U.S.C. 126 § 12101 *et seq*. when they discharged Durm based on her disability.

126.    Alternatively, Defendants violated 42 U.S.C. 126 § 12101 *et seq*. when it discharged Durm based on her perceived disability.

127.    Defendants violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Durm based on her disabling condition.

128.    Alternatively, Defendants violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Durm based on her perceived disabling condition.

129.    Durm suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

130.    As a direct and proximate result of Defendants' conduct, Durm suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: FAILURE TO ACCOMMODATE IN VIOLATION OF
## 42 U.S.C. 126 § 12101 *et seq.*

### (Asserted Against IQOR Only).

131.    Durm informed Defendants of her disabling condition.

132.    Durm requested accommodations from Defendants to assist with her disabilities including changing her schedule.

133.    Durm requested accommodations from Defendants including an ergonomic chair to decrease the pain she felt while sitting at work.

134.    Durm requested accommodations from Defendants including having some time off work to deal with pain associated with her disability.

135.    Durm's requested accommodations were reasonable.

136.    There was an accommodation available that would have been effective and would have not posed an undue hardship to IQOR.

137.    Defendants failed to engage in the interactive process of determining whether Durm needed an accommodation.

138.    Defendants failed to provide an accommodation to Durm.

139.    Defendants violated 42 U.S.C. 126 § 12101 *et seq.* by failing to provide Durm a reasonable accommodation.

140.    Durm suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

141.    As a direct and proximate result of Defendants' conduct, Durm suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III:  RETALIATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq*.

## (Asserted Against IQOR Only).

142. Durm restates each and every prior paragraph of this complaint, as if it were fully restated herein.

143. As a result of the Defendants' discriminatory conduct described above, Durm complained about the disability discrimination she was experiencing.

144. Subsequent to Durm's reporting of disability discrimination to Defendants, they failed to provide her reasonable accommodations.

145. Subsequent to Durm's reporting of disability discrimination to Defendants, they refused to permit Durm to return to work even though she could work with or without reasonable accommodation(s).

146. Subsequent to Durm's reporting of disability discrimination to Defendants, they terminated her employment.

147. Defendant's actions were retaliatory in nature based on Durm's opposition to the unlawful discriminatory conduct.

148. Pursuant to 42 U.S.C. 126 § 12101 *et seq*., it is unlawful to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined under this statute.

149. Durm suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

150. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Durm, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

## (Asserted Against All Defendants).

151.    Durm restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152.    Durm suffers from bilateral osteoarthritis in her knees.

153.    Durm suffers from degenerative joint disease in her back.

154.    The symptoms Durm suffers as a result of the bilateral osteoarthritis and degenerative joint disease substantially impair one or more major life activities including working.

155.    As a result of suffering from bilateral osteoarthritis and degenerative joint disease, Durm is considered disabled.

156.    Alternatively, Defendants perceived Durm to be disabled.

157.    Despite any real or perceived disability, Durm could complete her essential job functions with or without reasonable accommodation(s).

158.    Defendants treated Durm differently than other similarly-situated employees based on her disabling condition.

159.    Alternatively, Defendants treated Durm differently than other similarly-situated employees based on her perceived disabling condition.

160.    Defendants terminated Durm's employment without just cause.

161.    Defendants terminated Durm's employment based on her disability.

162.    Alternatively, Defendants terminated Durm's employment based on her perceived disability.

163.    Defendants violated R.C. § 4112.01 *et seq.* when they discharged Durm based on her disability.

164. Alternatively, Defendants violated R.C. § 4112.01 *et seq*. when it discharged Durm based on her perceived disability.

165. Defendants violated R.C. § 4112.01 *et seq*. by discriminating against Durm based on her disabling condition.

166. Alternatively, Defendants violated R.C. § 4112.01 *et seq*. by discriminating against Durm based on her perceived disabling condition.

167. Durm suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

168. As a direct and proximate result of Defendants' conduct, Durm suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: FAILURE TO ACCOMMODATE IN VIOLATION OF R.C. § 4112.01 *et seq*.
## (Asserted Against All Defendants).

169. Durm informed Defendants of her disabling condition.

170. Durm requested accommodations from Defendants to assist with her disabilities including changing her schedule.

171. Durm requested accommodations from Defendants including an ergonomic chair to decrease the pain she felt while sitting at work.

172. Durm requested accommodations from Defendants including having some time off work to deal with pain associated with her disability.

173. Durm's requested accommodations were reasonable.

174. There was an accommodation available that would have been effective and would have not posed an undue hardship to IQOR.

175. Defendants failed to engage in the interactive process of determining whether Durm needed an accommodation.

17

176.   Defendants failed to provide an accommodation to Durm.

177.   Defendants violated R.C. § 4112.01 *et seq*. by failing to provide Durm a reasonable accommodation.

178.   Durm suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

179.   As a direct and proximate result of Defendants' conduct, Durm suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VI:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I).

### (Asserted Against All Defendants).

180.   Durm restates each and every prior paragraph of this complaint, as if it were fully restated herein.

181.   As a result of the Defendants' discriminatory conduct described above, Durm complained about the disability discrimination she was experiencing.

182.   Subsequent to Durm's reporting of disability discrimination to Defendants, they failed to provide her reasonable accommodations.

183.   Subsequent to Durm's reporting of disability discrimination to Defendants, they refused to permit Durm to return to work even though she could work with or without reasonable accommodation(s).

184.   Subsequent to Durm's reporting of disability discrimination to Defendants, they terminated her employment.

185.   Defendant's actions were retaliatory in nature based on Durm's opposition to the unlawful discriminatory conduct.

186.    Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

187.    Durm suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

188.    As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Durm, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VII: RETALIATION IN VIOLATION OF THE FMLA.

### (Asserted Against All Defendants).

189.    Durm restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

190.    During her employment, Durm requested to apply for FMLA leave.

191.    During her employment, Durm requested to utilize FMLA leave.

192.    As of January 1, 2019, Durm had worked at least 1,250 hours for Defendants.

193.    Durm would have worked 12 calendar months with Defendants as of January 23, 2019.

194.    Defendants terminated Durm on or about January 7, 2019.

195.    After Durm requested to apply for FMLA leave, Defendants retaliated against her.

196.    After Durm requested to utilize FMLA leave, Defendants retaliated against her.

197.    Defendants retaliated against Durm by terminating her employment.

198.    Defendants willfully retaliated against Durm in violation of U.S.C. § 2615(a).

199.    As a direct and proximate result of Defendants' wrongful conduct, Durm is entitled to all damages provided for pursuant to the Family Medical Leave Act, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT VIII: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA
## (29 U.S.C. § 207).

### (Asserted Against All Defendants).

200.    Durm restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

201.    The FLSA requires each covered employer such as IQOR to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

202.    Durm was not exempt from the right to receive overtime pay under the FLSA during her employment with Defendants.

203.    Durm is entitled to be paid overtime compensation for all overtime hours worked.

204.    Defendants paid Durm for some overtime hours she worked; however, as a result of Defendant's unlawful failure to pay Durm for all hours worked, Durm was denied all overtime pay she was owed.

205.    As a result of Defendants' failure to properly compensate Dur, at a rate not less than 1.5 times the regular rate of pay for all work performed in excess of 40 hours in a work week, Defendants violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

206.    Durm is entitled to damages in the amount of her unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including her attorneys' fees and costs.

207.    At all times relevant to this action, Defendants willfully failed and refused to pay Plaintiff overtime wages required by the FLSA, causing Plaintiff to suffer damage in amounts to be proven at trial.

208.  Defendants either recklessly failed to investigate whether their failure to pay Durm an overtime wage for all the hours she worked in excess of 40 per week during the relevant time period violated the Federal Wage Laws of the United States, they intentionally misled Durm to believe that Defendants were not required to pay her overtime wages for certain work she performed, and/or Defendants concocted a scheme pursuant to which they deprived Durm all of the overtime pay she earned.

209.  Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

210.  Defendants violated the FLSA without a good faith belief that their conduct was lawful.

211.  Durm requests recovery of her attorney's fees and costs associated with this cause as provided by 29 U.S.C. § 216(b).

### COUNT IX:  VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.

### (Asserted Against All Defendants).

212.  Durm incorporates by reference the allegations in the preceding paragraphs.

213.  At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the OMFWSA.

214.  At all relevant times, Defendants have employed and continue to employ, "employees," within the meaning the OMFWSA.

215.  Durm was an employee of Defendants as that term is defined by the OMFWSA.

216.  Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

217.    Defendants failed to pay Durm overtime for all hours she worked in excess of 40 per week.

218.    In denying Durm overtime compensation, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

219.    As a direct and proximate result of Defendant's unlawful conduct, Durm has suffered and will continue to suffer a loss of income and other damages.

220.    Having violated the OMFWSA, Defendants are joint and severally liable to Durm pursuant to O.R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and reasonable attorneys' fees. Additionally, Defendants are joint and severally liable to Durm for an amount equal to twice his unpaid wages.  O.R.C. § 4111.14(J).

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Belinda Durm requests judgment against all Defendants and for an Order:

(a) Requiring Defendants to restore Durm to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) Awarding against each Defendant compensatory and monetary damages to compensate Durm for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) Awarding punitive damages against each Defendant in an amount in excess of $25,000;

(d) Awarding Plaintiff unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(e) Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 et seq.

(f) Issuing a declaratory judgment that Defendants violated the recording-keeping requirements of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a), and the OMWFSA, R.C. § 4111.08;

(g) Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

(h) An award of reasonable attorneys' fees and non-taxable costs for Durm's claims as allowable under law;

(i) An award of the taxable costs of this action; and

(j) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
       daniel.dubow@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Belinda Durm demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)

23