PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BELINDA DURM, | ) | |
| | ) | CASE NO.  5:20CV0298 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| IQOR HOLDINGS US LLC, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 11 and 15] |

Pending is Defendants iQor Holdings US LLC ("iQor") and Gary Janzig's ("Janzig")

Motion to Compel Arbitration and to Dismiss the Action (ECF No. 11).  Defendants contend that

Plaintiff Belinda Durm cannot maintain this lawsuit in federal court because her claims are

covered by the parties' written "Mutual Agreement to Arbitrate Employment-Related Claims"

(the "Arbitration Agreement") (ECF No. 11-2 at PageID #: 122-25)[1] that Plaintiff signed when

she applied for employment with iQor.  The Agreement establishes mandatory procedures for

resolving such disputes through arbitration administered by the American Arbitration

Association ("AAA").

Also pending is Plaintiff's Motion to Disregard New Evidence Raised in Defendants'

Reply Brief (ECF No. 15).

---

[1] Plaintiff was provided with a copy of this signed document prior to the filing of
the above-entitled action.  *See* Declaration of Hannah Choi (ECF No. 14-1) at PageID #:
210-11, ¶3; Email Thread (ECF No. 14-1 at PageID #: 216).

(5:20CV0298)

The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons set forth below, ECF No. 11 is granted and ECF No. 15 is denied.

**I.**

The following facts are taken from the Complaint (ECF No. 1).  On or about January 23, 2018, Plaintiff was hired by iQor as a debt collector.  Janzig was a manager and/or supervisor at iQor.  Plaintiff suffers from bilateral osteoarthritis in her knees and degenerative joint disease in her back.  In the summer of 2018, Plaintiff had to start receiving injections in her knees.  She suffered swelling and pain following the injections, so periodically she would request time off from work.  Defendants would instruct Plaintiff to work four (4) ten-hour shifts to make up for requesting time off work.  Plaintiff requested that iQor provide her with an ergonomic chair and was told she could buy her own chair if she wanted one.  iQor threatened to discipline Plaintiff because she was taking too long for bathroom breaks.  She complained to iQor that threatening to dock her pay due to taking long bathroom breaks was harassing and/or discriminating on the basis of her disability.  Plaintiff took time off from work on September 3-6, 2018 due to suffering from severe pain.  On September 7, 2018, Plaintiff advised Defendants she wanted to apply for a leave of absence under the Family Medical Leave Act ("FMLA").  Defendants advised Plaintiff that she did not qualify for FMLA leave, but could apply for and use Americans with Disabilities Act ("ADA") disability leave.  Plaintiff received a work release with restrictions from her doctor on or about November 8, 2018.  Defendants advised Plaintiff that if she was not able to return to work without restrictions on January 2, 2019, that her employment would be terminated.

(5:20CV0298)

Defendants terminated Plaintiff's employment on or about January 7, 2019 because she could not return to work without restrictions.

Plaintiff's hours of work were captured via a computer program installed on the computer she used to perform her job duties. She was paid $13.50 per hour and was allegedly non-exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wages Standards Act ("OMFWSA"). Plaintiff typically had to log into her computer as much as 15 minutes before her shift started in order to be logged in and to have all of her software up and running ("Pre-Shift Work"). Sometimes Plaintiff would be delayed in logging into her computer or opening certain software due to technical issues with the software or because of problems with her password(s). Allegedly, she was not paid for Pre-Shift Work or for the extra time it took to log into her computer or to start up the software. Defendants would not begin recording Plaintiff's time until she received a call. Therefore, time Plaintiff spent waiting for her first call was also not compensated.

Plaintiff brings federal claims under the ADA (Counts I (discrimination), II (failure to accommodate), and III (retaliation)), retaliation in violation of the FMLA (Count VII), and for a willful violation of the FLSA (Count VIII). Plaintiff also brings parallel state law claims under Ohio's anti-discrimination statute, Ohio Rev. Code § 4112.01, *et seq.* (Counts IV (discrimination), V (failure to accommodate), and VI (retaliation)) and the OMFWSA (Count IX).

(5:20CV0298)

## II.

### A.

iQor accepts applications for employment through its website, https:/ /jobs.iqor.com/.  It uses a third party vendor, Success Factors (an online human resource information system), to host this site.  As a completely separate part of the job application process, all applicants are presented with an Arbitration Agreement.  All applicants enter an email address and create a password.  After this initial step, they are directed to complete the job application.  All applicants electronically sign the Arbitration Agreement by clicking "I Agree," and then by typing in the last four digits of their social security number, as well as their month and day of birth.[2]  They are also required to type their full name to sign their job applications.  If they sign the Arbitration Agreement, they agree that, *inter alia*, any dispute relating to their employment or separation from employment will be resolved pursuant to the terms of the Arbitration Agreement.  They also

---

[2]  Under both the Ohio Uniform Electronic Transactions Act, Ohio Rev. Code § 1306.01, *et seq.*, and the federal Electronic Signatures in Global and National Commerce Act ("ESIGN"), 15 U.S.C. § 7001, an electronic signature has the same effect and is just as legally binding as a handwritten signature.  Specifically, Ohio Rev. Code § 1306.06(A) and (B) state that a "signature may not be denied legal effect or enforceability solely because it is in electronic form . . . [and a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation."  Indeed, federal and Ohio courts routinely enforce arbitration agreements that were electronically signed.  *See, e.g.*, *Sherman v. Service Corp. Int'l.*, No. 3:16CV0011, 2017 WL 36270, at *2 (N.D. Ohio Jan. 4, 2017) (finding arbitration agreement enforceable when employee electronically signed agreement); *Bell v. Hollywood Enter. Corp.*, No. 87210, 2006 WL 2192053, at *3 n. 3 (Ohio Ct. App. 8th Dist. Aug. 3, 2006) (finding arbitration agreement enforceable when plaintiff electronically agreed to arbitrate because "federal and Ohio law both authorize the use of electronic signatures and deem such signatures binding.").

(5:20CV0298)

agree that all issues regarding the enforceability and applicability of the Arbitration Agreement will be determined by the arbitrator.

On January 9, 2018, Plaintiff applied for a job with iQor and, on that date, she accepted and agreed to the Arbitration Agreement by clicking "I Agree," and by entering the last four digits of her social security number and her birthdate.  *See* Copy of the January 9, 2018 job application and Arbitration Agreement accepted by Plaintiff (ECF No. 11-2 at PageID #: 119-30).  Plaintiff agreed that "any dispute, controversy or claim arising out of or related to in any way to the Parties' employment relationship or termination of that relationship . . . shall be submitted to and decided by binding arbitration. . . ."  ECF No. 11-2 at PageID #: 122.  She also agreed that claims against iQor's employees (such as Plaintiff's claims against Janzig) are also covered by the Arbitration Agreement.  The parties also agreed to delegate to arbitration threshold issues related to the enforceability and validity of the Arbitration Agreement.

By agreeing to the Arbitration Agreement, Plaintiff specifically acknowledged that she was voluntarily signing the Agreement, that she was giving up the right to a jury trial, and that she had the right to opt-out of the Agreement:

> . . . [She] has been given the opportunity to fully review the terms of this Agreement.  The Employee understands the terms of this Agreement and freely and voluntarily signs this Agreement.  The Employee and Employer fully understand that they are giving up certain rights otherwise afforded to them by civil court actions, including but not limited to the right to a jury trial.  Employee acknowledges and understands that s/he has the right to opt-out of this Agreement.  To effectively opt-out, the request to opt-out must be in writing, must be delivered via overnight mail, postmarked within fifteen (15) calendar days of the date the Employee signed this Agreement, and addressed to Senior Employment Counsel, iQor, 200 Central Avenue, St. Petersburg, FL 33701.

ECF No. 11-2 at PageID #: 124.

5

(5:20CV0298)

After accepting the Arbitration Agreement, a job applicant has the opportunity to opt-out

of the Arbitration Agreement if she so desires.  Plaintiff, however, did not opt-out of

the Arbitration Agreement.  *See* Declaration of Nicole Thomas (ECF No. 11-2) at PageID #: 117

¶ 6.

The Arbitration Agreement explicitly provides that the Employee and the Employer must

arbitrate their disputes and not litigate them in court.  It is intended to cover all potential claims

that could arise from an application for employment or actual employment for a successful

applicant – like Plaintiff.  The Arbitration Agreement also delegates the authority to determine

arbitrability solely to the arbitrator:

> Intent of Agreement.  In consideration of the company's ("Employer") promise to
> consider the Employee's application for employment, or in consideration of the
> Employee's employment, promotion and/or pay increase, whichever is applicable,
> and in consideration of the Employer's promise to arbitrate all
> employment-related disputes, the Employee and the Employer (collectively
> referred to herein as the "Parties") agree that any dispute, controversy or claim
> arising out of or related to in any way to the Parties' employment relationship or
> termination of that relationship, *including this Agreement to arbitrate or any*
> *breach of this Agreement*, shall be submitted to and decided by binding arbitration
> in the state the Employee performed or applied to perform the principal duties of
> his or her job.
>
>         \*   \*   \*
>
> Covered Claims.  This Agreement to arbitrate covers all disputes, claims or causes
> of action that otherwise could be brought in a federal, state, or local court under
> applicable federal, state, or local laws, arising out of or relating to the Employee's
> employment with the Employer and/or the termination thereof, including claims
> the Employee may have against the Employer or against its officers, directors,
> supervisors, managers, employees, or agents in their capacity as such, or
> otherwise, or that the Employer may have against the Employee.  This Agreement
> likewise covers all claims by an applicant for employment or rejected applicant
> for employment which claim relates to or arises out of the Employer's application
> or hiring process.  The claims covered by this Agreement include, but are not
> limited to, claims for breach of contract or covenant (express or implied), tort
> claims, claims for wages or other compensation due, claims for wrongful

6

(5:20CV0298)

>termination (constructive or actual), claims for retaliation, claims for
>discrimination or harassment (including, but not limited to, harassment or
>discrimination based on race, age, color, sex, gender, national origin, religion,
>marital status, partnership status, military status, predisposing genetic
>characteristics, medical condition, mental condition, criminal history, disability,
>sexual orientation, or any other trait or characteristic protected by federal, state, or
>local law), claims under the Fair Credit Reporting Act, and claims for violation of
>any federal, state, local, or other governmental law, statute, regulation, or
>ordinance. . . .

ECF No. 11-2 at PageID #: 122-23 (emphasis added).

**B.**

A party aggrieved by the refusal of another party to arbitrate under an agreement for

arbitration may petition the court for an order directing that such arbitration proceed according to

the terms of the agreement.  9 U.S.C. § 4.  The Court's task is to "determine whether the parties

agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Whether the parties' contract evinces an agreement to arbitrate is governed by principles of state

contract law.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  When "the

dispute at issue concerns contract formation, the dispute is generally for courts to decide."

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).  Because arbitration

agreements are contracts, their enforceability is reviewed according to the applicable state law of

contract formation.  *Seawright v. American General Financial Services, Inc.*, 507 F.3d 967, 972

(6th Cir. 2007) (citing *First Options*, 514 U.S. at 943-44).

The Sixth Circuit applies a four-part test to determine whether a court should grant a

motion to stay litigation and compel arbitration:

>*first*, it must determine whether the parties agreed to arbitrate; *second*, it must
>determine the scope of that agreement; *third*, if federal statutory claims are

(5:20CV0298)

asserted, it must consider whether Congress intended those claims to be nonarbitrable; and *fourth*, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout*, 228 F.3d at 714. Plaintiff argues that the first two elements are at issue in the within motion. *See* ECF No. 13 at PageID #: 151.

In examining a motion to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Jones v. U-HAUL Co. of Mass. and Ohio, Inc.*, 16 F. Supp.3d 922, 930 (S.D. Ohio 2014) (quoting *Raasch v. NCR Corp.*, 254 F. Supp.2d 847, 851 (S.D. Ohio 2003)). Arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of arbitrability. *AT&T Technologies, Inc. v. Comms. Workers of America*, 475 U.S. 643, 648-50 (1986); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**1.**

**a.**

All issues raised in this action are arbitrable. Plaintiff's employment-related claims fall within the arbitrable claims set forth in the Arbitration Agreement. Plaintiff specifically agreed to arbitrate "any dispute, controversy or claim arising out of or related to in any way to the Parties' employment relationship or termination of that relationship," including "tort claims, claims for wages or other compensation due, claims for wrongful termination (constructive or actual), claims for retaliation, claims for discrimination or harassment . . . and claims for violation of any federal, state, local, or other governmental law, statute, regulation, or ordinance."

8

(5:20CV0298)

ECF No. 11-2 at PageID #: 122-23. *See, e.g., Sroka Advance Vehicles, Inc. v. Material Handling, Inc.*, No. 1:11CV0907, 2011 WL 3047720, at *5 (N.D. Ohio July 25, 2011) (holding that "broadly-worded arbitration agreement not only governs disputes arising directly under the contract but also applies to other disputes that could not be maintained without reference to the contract or relationship at issue," and compelling arbitration ).

Plaintiff admits that she submitted an online application for employment with iQor. Declaration of Belinda Durm (ECF No. 13-1) at PageID #: 169, ¶ 2. Plaintiff argues, however, that she "does not recall" accepting and agreeing to the Arbitration Agreement by clicking "I Agree," and entering the last four digits of her social security number and her birthdate. ECF No. 13 at PageID #: 148. She maintains that she "never signed or executed" the January 9, 2018 Arbitration Agreement (ECF No. 11-2 at PageID #: 119-30) and job application. Declaration of Belinda Durm (ECF No. 13-1) at PageID #: 169, ¶ 6. Plaintiff's arguments that she does not remember signing the Arbitration Agreement and general denial of signing it are insufficient to disprove the evidence provided by Defendants. For the reasons set forth above, Plaintiff's electronic signature is valid and the Arbitration Agreement is enforceable. *See Sherman*, 2017 WL 36270, at *2 (plaintiff's assertion that she did not sign the Arbitration Agreement failed to create any issue as to whether the parties had a valid agreement to arbitrate); *Jones v. U-Haul Co. of Massachusetts and Ohio Inc.*, 16 F. Supp.3d 922, 934-35 (S.D. Ohio 2014) (holding that evidence provided by defendant of plaintiff's electronic signature, submitted via an online human resources system, was sufficient to enforce an arbitration agreement); *Morgan v. United Healthcare Servs., Inc.*, No. 1:12-CV-676-HJW, 2013 WL 1828940, at *3 (S.D. Ohio Apr. 30,

9

(5:20CV0298)

2013) (rejecting plaintiff's contention that despite using her unique employee ID to electronically sign an arbitration agreement, the company might have forged her e-signature, and holding that "[s]uch speculation provides no basis to invalidate the parties' express agreement to arbitrate.").

**b.**

Plaintiff's allegations against Janzig arose out of his employment and his duties for iQor as a management-level employee.  Plaintiff agreed to arbitrate all employment-related claims she had, not only against iQor, but also any of its employees – "[t]his Agreement to arbitrate covers all disputes, claims or causes of action . . . arising out of or relating to the Employee's employment with the Employer and/or the termination thereof, including claims the Employee may have against the Employer or against its officers, directors, supervisors, managers, employees, or agents in their capacity as such, or otherwise."  ECF No. 11-2 at PageID #: 123.

Although Janzig is not a signatory to the Arbitration Agreement, Plaintiff must also arbitrate all claims she is asserting against Janzig.  Courts have recognized that a party cannot circumvent a promise to arbitrate by simply naming nonsignatory parties as defendants in the complaint because "the effect of the rule requiring arbitration would, in effect, be nullified" by such an action.  *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990).  "[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles."  *Id.* (quoting *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)).

10

(5:20CV0298)

**2.**

All issues raised in this action must be submitted to arbitration.  The Arbitration Agreement contains a delegation clause that provides "any dispute, controversy or claim arising out of or related to in any way to the Parties' employment relationship or termination of that relationship, *including this Agreement to arbitrate or any breach of this Agreement*, shall be submitted to and decided by binding arbitration." ECF No. 11-2 at PageID #: 122 (emphasis added).  Therefore, any question as to the validity of the Arbitration Agreement and whether it applies to this dispute, has been delegated to, and must be decided by, the arbitrator – not the Court.  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the [Federal Arbitration Act ("FAA")] operates on this additional arbitration agreement just as it does on any other."); *Halliday v. Beneficial Holiday I, Inc.*, No. 2:12-cv-708, 2013 WL 693022, at *6 (S.D. Ohio, Feb. 26, 2013) ("The Court here decides only that an arbitrator may decide threshold issues as anticipated by the delegation clause . . . [a]s required by *Rent-A-Center v. Jackson*, the Court defers to arbitration the issues, raised by plaintiffs, of whether the arbitration rider itself is unconscionable and whether it should be given effect.").  Therefore, the Court need not even consider the various arguments regarding enforceability set forth in Plaintiff's Brief in Opposition.  *See, e.g.*, ECF No. 13 at PageID #: 146-47 (arguing the Arbitration Agreement is unenforceable because the term "Employer" is vague and ambiguous); ECF No. 13 at PageID #: 153-55 (contending the January 10, 2018 Offer somehow renders the Arbitration Agreement meaningless); ECF No. 13 at PageID #: 163-66

11

(5:20CV0298)

(arguing that Defendants cannot enforce the Arbitration Agreement because they waived their arbitration rights).

Because all issues of enforceability and arbitrability are committed to arbitration, it would not be appropriate for the Court to rule on any challenges to the enforceability or applicability of the Arbitration Agreement.  However, even if the Court were to evaluate the enforceability and interpretation of the Arbitration Agreement, the outcome is the same:  Plaintiff must arbitrate.

In exchange for iQor's agreement to consider Plaintiff's employment application (and ultimately hiring her), Plaintiff had the option of (1) opting out of the Arbitration Agreement and entering into an employment relationship with iQor or (2) agreeing to be bound by the Arbitration Agreement and entering into an employment relationship with the Employer. Plaintiff agreed to be bound by the terms of the Arbitration Agreement, and did not opt-out.  ECF No. 11-2 at PageID #: 117 ¶ 6.  Plaintiff consented to the Arbitration Agreement on January 9, 2018.  Under the opt-out clause, Plaintiff had fifteen (15) calendar days to opt-out of the agreement after accepting it, but she did not do so, thereby becoming bound by the terms of the Arbitration Agreement.  Plaintiff then became an employee of iQor until her employment was terminated in January 2019.

**III.**

Upon concluding that the plaintiff's claims are subject to arbitration, a district court may dismiss the action or, if requested by a party, stay the action.  The FAA "instructs that 'upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration,' the court 'shall on application of one of the parties stay the trial of the action until such arbitration

12

(5:20CV0298)

has been had in accordance with the terms of the agreement, providing the applicant for the stay

is not in default in proceeding with such arbitration.' " *Hilton v. Midland Funding, LLC*, 687

Fed.Appx. 515, 518 (6th Cir. 2017) (quoting 9 U.S.C. § 3).  "Given [this Court's] ruling that all

issues raised in this action are arbitrable and must be submitted to arbitration, retaining

jurisdiction and staying the action will serve no purpose." *Green v. Ameritech Corp.*, 200 F.3d

967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th

Cir.1992)).  Plaintiff's claims against Defendants are subject to binding arbitration.  Accordingly,

the Court's retention of jurisdiction during the pendency of arbitration would serve no purpose,

and dismissal is the appropriate remedy.  *Arnold*, 920 F.2d at 1276.

**IV.**

Plaintiff moves the Court to disregard the new and supplemental declarations attached to

Defendants' Reply Brief.  *See* ECF No. 15.[3]  The Court disagrees with Plaintiff's argument that

Defendants have improperly introduced new evidence in their Reply Brief.  "[W]hile a party may

not raise an issue for the first time in a reply brief, it may *reply* to arguments made in the

response brief." *KCI USA, Inc. v. Healthcare Essentials, Inc.*, No. 1:14CV549, 2018 WL

1000048, at *2 (N.D. Ohio Feb. 21, 2018) (Pearson, J.) (citing *Scottsdale Ins. Co. v. Flowers*,

513 F.3d 546, 553 (6th Cir. 2008) (emphasis in original).  That is what Defendants did in the case

at bar.  iQor and Janzig submitted a declaration from Hannah Choi (ECF No. 14-1) and

supplemental declaration from Nicole Thomas (ECF No. 14-2) to demonstrate why the

---

[3]  Plaintiff did not file a permissive reply memorandum in support of ECF No. 15.
*See* LR 7.1(e).

(5:20CV0298)

arguments raised by Plaintiff in her Brief in Opposition (ECF No. 13) were incorrect.  The

declarations do not introduce new issues, as Plaintiff contends.

### V.

For the foregoing reasons,

Defendants iQor Holdings US LLC and Gary Janzig's Motion to Compel Arbitration and

to Dismiss the Action (ECF No. 11) is granted.

Plaintiff's Motion to Disregard New Evidence Raised in Defendants' Reply Brief (ECF

No. 15) is denied.


IT IS SO ORDERED.


   January 24, 2022                                 */s/ Benita Y. Pearson*          
Date                                            Benita Y. Pearson
                                            United States District Judge

14